FILED
2022 Oct-20  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CEDRICK THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:19-cv-655-ACA** |
| | ) | |
| **MARK PETTWAY, in his official** | ) | |
| **capacity as Sheriff of Jefferson** | ) | |
| **County, Alabama,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Former Jefferson County Sheriff Mike Hale fired his deputy, Cedric Thomas, for using excessive force in violation of Sheriff's Office policy. After his termination, Mr. Thomas sued current Jefferson County Sheriff Mark Pettway in his official capacity, alleging that the Sheriff's Office disciplined him more severely than white and female deputies who engaged in similar uses of force. Mr. Thomas is a black male. His complaint asserts claims for racial and sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

After discovery, Sheriff Pettway moved for summary judgment (doc. 36), which has been fully briefed. The court has considered the arguments and evidence submitted by the parties and **WILL GRANT** Sheriff Pettway's motion because Mr.

Thomas failed to establish: (1) a prima facia case of either racial or sex discrimination; (2) a dispute a material fact about whether the articulated reasons for terminating his employment were pretextual; and/or (3) a convincing mosaic of circumstantial evidence from which a trier of fact could infer discriminatory intent.

## I.    BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotations omitted).

The Sheriff's Office hired Mr. Thomas as a deputy in January 2014. (Doc. 35-1 at 2–3 ¶ 3). Mr. Thomas received the department's policy on use of force when he was hired. (*Id.* at 3 ¶ 3; *see also* doc. 35-4 at 6). Section 4-07.20 of that policy states that "[a]ny use of force that is not reasonably necessary, in light of the circumstances confronting the deputy, is prohibited." (Doc. 35-1 at 26).

The Sheriff's Office determined Mr. Thomas violated the policy on two occasions before his termination. In the first instance, Mr. Thomas slammed an inmate's head into a door and punched him repeatedly in the head and ribs without any provocation by the inmate. (Doc. 35-1 at 3 ¶ 5; *id.* at 12 (first incident video) at 0:00–0:30).

Five months later, Mr. Thomas engaged in a second use of force. (Doc. 35-1 at 3 ¶ 6). Video footage of this incident shows Mr. Thomas escorting an inmate down a set of stairs when both men fell to the ground and an altercation began. (*Id.* at 16 (second incident video) at 1:16–1:38). Mr. Thomas punched and kneed the inmate over eighty times while he laid on the floor. (Doc. 35-1 at 3–4 ¶ 6; *id.* at 16 (second incident video) at 1:53–2:54). Mr. Thomas then accused the inmate of assault. (Doc. 35-11 at 4, ¶ 7; *id.* at 21). But a jail committee reviewed the video footage of the incident and concluded that although the inmate used abusive or obscene language, the inmate did not assault Mr. Thomas or disrupt jail security. (Doc. 35-1 at 4 ¶ 7; *id.* at 21).

A Sheriff's Office Captain determined that Mr. Thomas's use of force in the second incident was unauthorized, and the Sheriff's Office placed him on administrative leave. (Doc. 35-1 at 4 ¶ 8, 23; doc. 41-7 at 2). While he was on leave, an Assistant Sheriff recommended that the Sheriff's Office terminate Mr. Thomas for this use of force. (Doc. 35-1 at 4 ¶ 9).

Several days later, the Sheriff's Office internal affairs division determined that Mr. Thomas's first use of force violated several Sheriff's Office policies, including the policy on use of force. (Doc. 35-1 at 3 ¶ 5; *id.* at 14–15). The internal affairs division recommended that Mr. Thomas be terminated based on that incident. (*Id.* at 3 ¶ 5; *id.* at 14–15).

Mr. Thomas received notice that the Sheriff's Office intended to take disciplinary action against him for both uses of force. (Doc. 35-3 at 10–11). Former Sheriff Hale conducted a hearing on those two matters, during which Mr. Thomas had the opportunity to address the allegations against him. (Doc. 35-1 at 4 ¶ 10). Former Sheriff Hale then found Mr. Thomas guilty of violating several Sheriff's Office policies, including the policy on use of force, and he terminated Mr. Thomas's employment on July 16, 2018. (*Id.* at 29). The termination letter states that former Sheriff Hale considered Mr. Thomas's entire employment history with the Sheriff's Office when reaching his decision. (*Id.*). In addition to the two uses of force against inmates, Mr. Thomas's work history included disciplinary action for wrestling with an inmate for which he served a ten-day suspension in November 2017. (Doc. 35-1 at 3 ¶ 4; *see also id.* at 11).

Mr. Thomas appealed Sheriff Hale's termination decision to the Personnel Board of Jefferson County. (Doc. 35-1 at 5 ¶ 12). During the pendency of Mr. Thomas's appeal, Sheriff Pettway was elected Sheriff of Jefferson County. (*Id.*). Sheriff Pettway assigned personnel to defend former Sheriff Hale's termination of Mr. Thomas. (*Id.*).

A hearing officer conducted an evidentiary hearing on Mr. Thomas's appeal and recommended that the Personnel Board affirm the decision to terminate Mr. Thomas's employment. (Doc. 35-3 at 10–26). The hearing officer determined that,

among other policies, Mr. Thomas's conduct during the two instances of force violated Sheriff's Office policy. (*Id*. at 28–32). The hearing officer explained that, although the disciplinary actions that Mr. Thomas appealed were not based on his conduct when he wrestled with an inmate in November 2017, that incident was "relevant" to the hearing officer's "consideration of Thomas's 'record of service.'" (*Id*. at 12 n.3).

The Personnel Board adopted the hearing officer's recommendation and upheld Mr. Thomas's termination. (Doc. 35-3 at 38–39). The Board's order stated that Mr. Thomas "was accused of twice using improper force against detainees in violation of" several Sheriff's Office policies. (*Id*. at 38). The order noted that both instances of excessive force for which Mr. Thomas was terminated occurred after the Sheriff's Office previously suspended Mr. Thomas for wrestling with an inmate. (*Id*. at 38 n.3).

## II.   DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could

return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotations omitted).

Mr. Thomas asserts claims for racial and sex discrimination pursuant to Title VII, which makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[ or] sex." 42 U.S.C. § 2000e-2(a)(1). (Doc. 1 at 5–12). Sheriff Pettway moves for summary judgment on both of Mr. Thomas's claims, arguing that Mr. Thomas has failed to present evidence creating genuine disputes of fact about whether the Sheriff's Office discriminated against him on the basis of race or sex.

A plaintiff may establish discrimination under Title VII through direct evidence, circumstantial evidence, or statistical proof. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Mr. Thomas has not presented direct evidence or statistical proof in support of his claims. (*See generally* doc. 41). Therefore, the court must determine whether Mr. Thomas has presented sufficient circumstantial evidence for a reasonable jury to find that the Sheriff's Office discriminated against him because of his race and sex.

Generally, if a plaintiff supports his claim of discrimination with circumstantial evidence, the court applies the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If a plaintiff cannot prove discrimination via

the *McDonnell Douglas* test, a discrimination claim still may survive summary judgment if the plaintiff "'presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). For purposes of his racial discrimination claim, Mr. Thomas relies on both theories. (Doc. 41 at 5–8). For purposes of his sex discrimination claim, Mr. Thomas relies only on the *McDonnell-Douglas* test. (*Id.* at 9).

### 1.  *McDonnell Douglas* Framework

When proceeding under *McDonnell Douglas*, a plaintiff must first make out a prima facie case of discrimination by showing "(1) that []he belongs to a protected class, (2) that []he was subjected to an adverse employment action, (3) that []he was qualified to perform the job in question, and (4) that h[is] employer treated 'similarly situated' employees outside h[is] class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019). If the plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant to present evidence showing a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1221. If the defendant can satisfy that burden, the plaintiff must present evidence from which a reasonable jury could find that the proffered reason was pretext for unlawful discrimination. *Id.* To establish that a reason was pretextual, the

plaintiff must present evidence "both that the reason was false, and that discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotations and emphasis omitted).

       *a.*      *Prima Facie Case*

Sheriff Pettway argues that Mr. Thomas cannot establish a prima facie case of race or sex discrimination because he has not demonstrated the that he was treated less favorably than similarly situated employees. (Doc. 37 at 8–15). The court agrees.

To establish the fourth element of a prima facie case, Mr. Thomas must demonstrate that he and at least one comparator for both his race and sex claims are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226 (quotations omitted). In most cases, adequate comparators are those who have been "engaged in the same basic conduct (or misconduct), . . . subject to the same employment policy, guideline, or rules, . . . under the jurisdiction of the same supervisor, . . . and [] share the [same] employment or disciplinary history" as the plaintiff. *Lewis*, 918 F.3d at 1227–28 (citations omitted). Employees are not similarly situated in all material respects if they "engaged in different conduct, [] were subject to different policies, or [] have different work histories." *Id.* at 1228

For purposes of his racial discrimination claim, Mr. Thomas's brief offers the names of six white deputies—(1) Deputy Kersh, (2) Deputy Junkins, (3) Deputy

O'Neal, (4) Deputy Arceo, (5) Deputy Powell, and (6) Deputy Butler—as comparators. (Doc. 41 at 6–7). For purposes of his sex discrimination claim, Mr. Thomas's brief offers the name of one female deputy—Deputy Johnson—as a comparator. (*Id*. at 9).

As explained below, none of these individuals are valid comparators.

### Deputy Kersh

Deputy Kersh was involved in two incidents involving inmates. First, on February 5, 2018, Deputy Kersh sprayed inmates with pepper spray after they refused to stop fighting. (Doc. 35-3 at 4 ¶ 9.b.; *id.* at 42–44). A jail commander reviewed Deputy Kersh's use of force and deemed it authorized based on the Sheriff's Office use of force policy. (Doc. 35-3 at 4 ¶ 9.b.; *id.* at 42–44).

Second, on June 8, 2018, an inmate struck Deputy Kersh in the face with a food tray. (Doc. 41-1 at 2). Deputy Kersh "then began trying to defend [him]self from [the inmate] and [to get] him under control while using verbal commands." (*Id.*). Ultimately, another officer tased and subdued the inmate. (*Id*.). There is no evidence in the record indicating whether Deputy Kersh received a use of force violation for this incident.

Deputy Kersh did not engage in conduct similar to Mr. Thomas. Spraying inmates with pepper spray and defending oneself and attempting to control an inmate is materially dissimilar from repeatedly striking one inmate at least twenty times and

striking another inmate over eighty times. (Doc. 35-1 at 3–4 ¶¶ 5–6; doc. 35-3 at 13–14, 17–18, 38–39). In addition, Mr. Thomas has pointed to no evidence showing that Deputy Kersh shares his disciplinary history. Mr. Thomas was terminated for using excessive force against inmates on two separate occasions. (Doc. 35-1 at 3–4 ¶¶ 5–6, 29; doc. 35-3 at 13–14, 17–18, 38–39). And at the time of Mr. Thomas's termination, the Sheriff's Office previously had suspended him for wrestling with an inmate. (Doc. 35-3 at 38–39; *see also* doc. 3-1 at 29).

Accordingly, Deputy Kersh is not a valid comparator for purposes of Mr. Thomas's race discrimination claim.

### **Deputy Junkins**

Deputy Junkins was involved in the June 8, 2018 incident with Deputy Kersh. Deputy Junkins deployed his taser on the inmate to stop him from attacking Deputy Kersh. (Doc. 41-1 at 2). The record contains no evidence that Deputy Junkins was investigated or disciplined for this incident, and Deputy Junkins has no record of violating the Sheriff's Office policy against excessive force (doc. 35-3 at 4 ¶ 9.a.).

Deputy Junkins tased one inmate on one occasion when the inmate did not respond to verbal commands to stop fighting. (Doc. 41-1 at 2). This conduct differs in quality and kind from that of Mr. Thomas who repeatedly struck inmates on two occasions. (Doc. 35-1 at 3–4 ¶¶ 5–6; doc. 35-3 at 13–14, 17–18, 38–39). In addition,

unlike Mr. Thomas, Deputy Junkins has no disciplinary history of using excessive force against inmates. (*See* doc. 35-3 at 4 ¶ 9.a.).

Accordingly, Deputy Junkins is not a valid comparator for purposes of Mr. Thomas's race discrimination claim.

## Deputy O'Neal

On October 19, 2017, Deputy O'Neal ordered an inmate into isolation after the inmate flipped over a table. (Doc. 41-2 at 2). As Deputy O'Neal escorted the inmate to isolation, the inmate "jerked away" from Deputy O'Neal and acted aggressively towards him. (*Id.*). Once at the isolation room door, the inmate began to "pull away" again and threated to punch Deputy O'Neal in the face. (*Id.*). Deputy O'Neal and the inmate "got into a scuffle," and Deputy O'Neal placed the inmate in a hold until the inmate calmed down. (Doc. 41-2 at 2). Deputy O'Neal then placed the inmate in handcuffs without further incident. (*Id.*).

There is no evidence that Deputy O'Neal was investigated or disciplined for this incident, nor is there evidence of any other incident involving Deputy O'Neal and an inmate.

Deputy O'Neal did not engage in conduct materially similar to Mr. Thomas. After getting into a scuffle with an inmate, Deputy O'Neal held the inmate down until he could place the inmate in handcuffs. (Doc. 41-2 at 2). In comparison, Mr. Thomas repeatedly struck inmates on two occasions. (Doc. 35-1 at 3–4 ¶¶ 5–6; doc.

35-3 at 13–14, 17–18, 38–39). In addition, unlike Mr. Thomas, Deputy O'Neal has no record of violating Sheriff's Office policy against excessive force. (Doc. 35-3 at 4).

Accordingly, Deputy O'Neal is not a valid comparator for Mr. Thomas's race discrimination claim.

### Deputy Arceo

Deputy Arceo deployed a taser on a noncompliant inmate on two different occasions. First, on an unspecified date in 2018, Deputy Arceo deployed a taser on an inmate one time after the inmate threatened him. (Doc. 41-3 at 2). Then, on June 4, 2018, Deputy Arceo drive-stunned an inmate one time after the inmate refused instructions to return to his cell. (*Id.* at 3). There is no evidence that Deputy Arceo was investigated or disciplined for either of these incidents.

Deputy Arceo's use of force is materially dissimilar from Mr. Thomas's conduct. Unlike Mr. Thomas, who repeatedly struck inmates (doc. 35-1 at 3–4 ¶¶ 5–6; doc. 35-3 at 13–14, 17–18, 38–39), Deputy Arceo deployed a taser on inmates to try to subdue disruptive or non-complaint behavior (doc. 41-3 at 2–3).

Accordingly, Deputy Arceo is not a valid comparator for Mr. Thomas's race discrimination claim.

### **Deputy Powell**

On June 4, 2018, Deputy Powell responded to a fight between inmates. (Doc. 41-4 at 2). After giving both inmates multiple verbal orders to stop fighting, Deputy Powell tased one of the inmates. (*Id*.). Because the inmate would not comply with Deputy Powell's order to lie flat on the ground, Deputy Powell drive-stunned the inmate in the back. (*Id.*). There is no evidence that Deputy Powell was investigated or disciplined for this incident, nor is there evidence of any other incident involving Deputy Powell and an inmate.

Deputy Powell's tasing of an inmate who would not respond to verbal commands to stop fighting is unlike Mr. Thomas's two uses of force where he repeatedly struck inmates. (Doc. 35-1 at 3–4 ¶¶ 5–6; doc. 35-3 at 13–14, 17–18, 38–39). And unlike Mr. Thomas, Deputy Powell does not have a disciplinary history of using excessive force. (Doc. 35-3 at 4).

Accordingly, Deputy Powell is not a valid comparator for purposes of Mr. Thomas's race discrimination claim.

### **Deputy Butler**

Two years after Mr. Thomas's termination, Deputy Butler engaged in a struggle with an inmate during which he kicked the inmate twice while the inmate was on the ground. (Doc. 41-5 at 4). Sheriff Pettway deemed this an unauthorized use of force based on Sheriff's Office policy and suspended Deputy Butler for ten

days. (*Id*. at 2). At the time, Deputy Butler had one prior disciplinary violation for which he was suspended for five days. (*Id*. at 4). The record does not contain evidence concerning the nature of the conduct for which Deputy Butler was disciplined on that previous occasion.

To the extent that Mr. Thomas argues that Deputy Butler was treated more favorably than he was because Deputy Butler was suspended rather than terminated, this argument fails. Mr. Thomas and Deputy Butler's misconduct is materially dissimilar. During an ongoing struggle with an inmate, Deputy Butler kicked the inmate twice in the upper leg. (Doc. 41-5). The evidence establishes—and Mr. Thomas does not dispute—that Mr. Thomas struck one inmate at least twenty times and struck another inmate over eighty times. (Doc. 35-1 at 3–4, ¶¶ 5–6; doc. 35-3 at 38–39). Deputy Butler's single use of unauthorized force where he kicked an inmate twice is wholly unlike Mr. Thomas's conduct.

In addition, Mr. Thomas and Deputy Butler do not share a supervisor who made the relevant disciplinary decision. Former Sheriff Hale terminated Mr. Thomas. (Doc. 35-1 at 29). Sheriff Pettway disciplined Deputy Butler. (Doc. 41-5 at 4).

Accordingly, Deputy Butler is not a valid comparator for purposes of Mr. Thomas's race discrimination claim.

### Deputy Johnson

The only evidence of use of force by Deputy Johnson is Mr. Thomas's deposition testimony that "it's alleged that [Deputy Johnson] not only [t]ased some [female inmates], but fought with them . . . the way it was described by the supervisor was that she was throwing the female around." (Doc. 35-4 at 6).

Accepting as true that Deputy Johnson tased and fought with female inmates as Mr. Thomas suggests has been alleged by unknown sources, her conduct is not materially similar to Mr. Thomas's conduct. Again Mr. Thomas struck an inmate twenty times on one occasion, and he struck another inmate over eighty times on another occasion. (Doc. 35-1 at 3–4, ¶¶ 5–6; doc. 35-3 at 38–39). In addition, Deputy Johnson does not share a disciplinary history with Mr. Thomas because she has no record of using excessive force. (Doc. 35-3 at 4).

Accordingly, Deputy Johnson is not a valid comparator for purposes of Mr. Thomas's sex discrimination claim.

In sum, Mr. Thomas has not presented evidence creating a genuine dispute about whether he and any of the above deputies are "sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Lewis*, 918 F.3d at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). To the extent that Mr. Thomas asks the court to reconsider Sheriff Hale's determination that Mr. Thomas engaged in excessive force in violation of department policy (*see* doc.

41 at 2 ¶¶ 8–9, citing doc. 41-7), the court declines the invitation. *See Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges."). Therefore, Mr. Thomas has not established a prima facie case of racial or sex discrimination.

### b.   *Legitimate, Non-Discriminatory Reason and Pretext*

Even if Mr. Thomas could establish a prima facie case of either racial or sex discrimination, his claims would still fail because he presents no evidence that the legitimate, non-discriminatory reason for his termination are pretext for discrimination.

Here, Sheriff Hale terminated Mr. Thomas's employment because he was found guilty of violating Sheriff's Office policy against use of excessive force on two occasions. (Doc. 35-1 at 29; doc. 35-3 at 10–11). This is a legitimate, non-discriminatory reason for terminating Mr. Thomas's employment. Therefore, the burden shifts back to Mr. Thomas to provide evidence that this reason is false and pretext for unlawful discrimination. *See Springer*, 509 F.3d at 1348.

First, Mr. Thomas fails to present evidence that the legitimate, non-discriminatory reason for terminating his employment is false. Indeed, Mr. Thomas does not dispute that he engaged in two separate uses of force; he simply

16

disagrees with Sheriff Hale's determination that his use of force in each of those instances was excessive and in violation of Sheriff's Office policy. (*See* doc. 41 at 2 ¶¶ 8–9, 11). But if "the proffered reason is one that might motivate a reasonable employer," an employee "cannot succeed by simply quarreling with the wisdom of that reason," and the employee "is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Second, even if Sheriff Hale's reason for terminating Mr. Thomas's employment was false, Mr. Thomas has presented no evidence demonstrating that Sheriff Hale's reason for terminating him was pretext for unlawful discrimination. Mr. Thomas's brief offers no argument with respect to pretext for his sex discrimination claim, and his brief fares only marginally better with respect to his racial discrimination claim. (Doc. 41 at 5–9).

Mr. Thomas's brief does not mention the word "pretext." (*See generally* doc. 41). Therefore, it is difficult for the court to discern what evidence—if any— Mr. Thomas relies on to prove that racial discrimination was the real reason for his termination. To the extent Mr. Thomas claims that the proffered reasons for his termination are pretext because the Sheriff's Office did not treat other white deputies similarly (*id.* at 6–7), this evidence is insufficient. A plaintiff may use evidence "necessary and proper to support" a prima facie case to show that an employer's

explanations for its conduct are pretextual. *Lewis*, 918 F.3d at 1229. But as explained above, *see supra* pp. 9–16, the decision to treat Mr. Thomas differently than his identified comparators does not raise an inference of discriminatory intent.

Mr. Thomas's brief also points to text messages from Sheriff Pettway—sent before he was elected Sheriff—in which Sheriff Pettway "himself gave [Mr. Thomas] several names of white deputies he believed were treated more favorably, including Cliff Avery, Jeff Hall, and Lloyd Brasher." (Doc. 41 at 8). Mr. Thomas's brief mischaracterizes the content of the text messages between Sheriff Pettway and Mr. Thomas. According to the screenshots Mr. Thomas submitted with his brief, Mr. Thomas texted Sheriff Pettway on September 2, 2018 and asked if he "kn[e]w of any instances of use of [f]orce involving white deputies." (Doc. 41-6 at 27–28). A few days later, Sheriff Pettway gave Mr. Thomas the names of Cliff Avery, Jeff Hall, and Lloyd Brasher. (*Id*. at 32). The text messages do not support Mr. Thomas's contention that Sheriff Pettway believed those deputies were treated more favorably, and in any event, Mr. Thomas has submitted no evidence regarding the circumstances under which those deputies engaged in use of force or what discipline, if any, they received.

Mr. Thomas also points to his own testimony concerning a conversation that he had with Sheriff Pettway before Sheriff Pettway's election as Sheriff. (Doc. 41 at 8). Mr. Thomas testified that he had a discussion with Sheriff Pettway regarding his

termination and that Sheriff Pettway "stated that he supported me and thought that it was racially based." (Doc. 35-4 at 7).

Accepting Mr. Thomas's testimony as true, the conversation with Sheriff Pettway does not provide evidence of intentional discrimination on the part of anyone involved in the decision to terminate Mr. Thomas's employment. The conversation occurred prior to Sheriff Pettway's election as Sheriff, and it was Former Sheriff Hale—not Pettway—who was the decisionmaker responsible for Mr. Thomas's termination. (*See* doc. 35-1 at 29). Even if Sheriff Pettway believed at the time of Mr. Thomas's termination that the Sheriff's Office discriminated against Mr. Thomas, Mr. Thomas has not cited, and the court has not located, any binding authority standing for the proposition that a fellow employee's belief that an employment action was discriminatory, without more, is sufficient to establish pretext. Sheriff Pettway testified that he "was not part of the termination hearing" and that after he became the Sheriff and reviewed the case, he "did not see any discrimination." (Doc. 41-6 at 17). Mr. Thomas offers no evidence to contradict this testimony.

Accordingly, Mr. Thomas has not demonstrated that the legitimate, non-discriminatory reason for terminating his employment was pretext for unlawful discrimination, and his claims for both racial discrimination and sex discrimination fail under *McDonnell Douglas.*

2.    Convincing Mosaic

Mr. Thomas alternatively argues that, even if he fails to establish his racial discrimination claims under the *McDonnell Douglas* framework, he has presented a convincing mosaic of circumstantial evidence from which a trier of fact could infer that Sheriff Hale terminated him because of his race. (Doc. 41 at 8).

"Aside from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Jenkins*, 26 F.4th at 1250 (quoting *Smith*, 644 F.3d at 1328). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Id.* at 1250 (quoting *Lewis*, 934, F.3d at 1185).

Mr. Thomas argues that he has demonstrated a convincing mosaic of circumstantial evidence because the Sheriff's Office did not discipline or terminate white deputies he alleges engaged in similar uses of force and because "Sheriff Pettway himself believed that [Mr. Thomas] had been subjected to racial discrimination." (Doc. 41 at 8). The court has already explained how this evidence is insufficient for a trier of fact to infer intentional discrimination. *See supra* pp. 9–16, 18–19. That analysis applies equally here.

Accordingly, Mr. Thomas's racial discrimination claim fails under the circumstantial mosaic theory.

## III.   CONCLUSION

The court **WILL GRANT** Sheriff Pettway's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Sheriff Pettway on Mr. Thomas's race and sex discrimination claims.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 20, 2022.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE